[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (MOTION NO. 109)
The facts of this case arise out of the sale of a business. In the present case, the plaintiff has brought a complaint alleging a violation of the Connecticut Unfair Trade Practices Act (CUTPA). The complaint CT Page 4554 makes the following allegations. The plaintiff, Maloney Industries, Inc., entered into a stock purchase agreement for the sale of Aircraft Charter Group, Inc. (ACG). The plaintiff made this contract with the defendants, Wayfarer Aviation, Inc. (Wayfarer), J. Lynn Helms, Lorraine Helms, Scott Reichhelm, Carole Helms and Loralyn Helms. The agreement called for the defendants, stockholders in ACG, to sell all the existing stock of ACG to the plaintiff in August 1997.
The complaint alleges various "irregularities" which allegedly are "unfair, unethical, immoral and unscrupulous and [constitute] unfair trade practices as those terms are defined by the General Statutes." Specifically, the plaintiff alleges that existing customers refused to do business with ACG after the sale; that the defendants knew that one of ACG's customers would sell an aircraft that ACG had regularly serviced; that Wayfarer did not assist ACG in attracting new customers, despite the defendants' oral representations and representations within the sale agreement; that Wayfarer only used ACG as a subcontractor for two months after the sale; that Wayfarer and Carole Helms induced two employees to leave ACG and work for them; and that the defendants concealed a $27,771 tax liability from the plaintiff that came due after the plaintiff purchased ACG.
Based on this conduct, the plaintiff filed a single count complaint alleging CUTPA violations, and the defendants have filed a motion for summary judgment based upon the following arguments.
The defendants argue, first, that their usual trade or commerce is not selling businesses and, therefore, the sale of ACG does not constitute trade or commerce under CUTPA and, second, the defendants' alleged conduct does not constitute a violation of CUTPA. The court agrees.
The purpose of a motion for summary judgment is to "eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a mailer of law." Practice Book § 17-49. "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." CT Page 4555 (Internal quotation marks omitted.) Maffucci v. Royal Park LimitedPartnership, 243 Conn. 552, 554-55, 707 A.2d 15 (1998).
This court has previously decided that in order to have violated CUTPA, the defendant must have engaged "in the conduct of any trade or commerce" and that an isolated private sale of real estate does not constitute trade or commerce when the defendant does not regularly engage in the sale of real estate. Jakab v. Sewell, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 046054 (June 13, 1994, Rush, J.) Given this court's previous ruling and the strong support that a person must be engaged in his regular course of trade or commerce to have violated CUTPA; see Koehm v. Kuhn, 41 Conn. Sup. 130, 139,558 A.2d 1042 (1987), aff'd., 18 Conn. App. 313, 557 A.2d (1989) (Per Curiam) and Arawana Mills Co. v. United Technologies Corp.,795 F. Sup. 1238, 1253 (D. Conn. 1992); this court must determine whether the documentation submitted by the defendants demonstrates that no genuine issue of material fact exists in the present case because the defendants did not engage in the conduct of any trade or commerce.
Each individual defendant has asserted in a separate affidavit that he or she does not engage in the business of selling businesses. Also, in Carole Helm's affidavit, she avers, as the director of marketing and the then-vice president of marketing of Wayfarer, that Wayfarer does not engage in the selling of businesses as its regular business. The plaintiff does not contradict these statements. The plaintiff only argues that CUTPA should apply to the transaction involved in this case. As discussed above, the court has decided that CUTPA does not apply to those not engaged in their regular course of trade or commerce.
Moreover, even if CUTPA did apply to the present case, the plaintiff would still not prevail. The written stock purchase agreement, in paragraphs 5(c) and (d), provides that "[t]he Purchaser has been provided a full opportunity to obtain all information concerning the Corporation, and has been given full opportunity to obtain such additional information necessary to verify the accuracy of such information, as he deemed necessary or appropriate in order for it to make its decision to purchase the Shares"[1] and "[i]n making his decision to purchase the Shares [of ACG], the Purchaser had relied solely upon independent investigations made by it and/or its representatives and the representations and warranties expressly set forth in this Agreement. No representations or warranties have been made to the Purchaser by any Seller or the Corporation or any officer, employee, agent or affiliate of' any of them, other than those that are expressly set forth in this Agreement."[2] Also, paragraph 12 of the contract states that "[t]his agreement constitutes the entire agreement of the parties and may not be changed, terminated or discharged orally." In an CT Page 4556 affidavit for the plaintiff, Stephen Maloney, the president of the plaintiff, admits that the contract contained these provisions and does not dispute the interpretation of the contract.
For the significance of a sale contract in a CUTPA claim, this court looks to Siudyla v. Chem Exec Relocation Systems, Inc., 23 Conn. App. 180,579 A.2d 578 (1990). In Siudyla, the plaintiffs had alleged fraud against ChemExec, the company that had sold them real property. Applying the cigarette rule to the case, the court noted that "[f]irst, the plaintiffs reviewed the sale contract with their attorney and were legally counseled prior to its execution. Second, ChemExec explicitly advised the plaintiffs that it was a relocation company and not in a position to make any representations about the property. Finally, the plaintiffs conceded that they purchased the property `as is.' Even when read in a light most favorable to the plaintiffs, these facts demonstrate that ChemExec was candid in its role as the contractual seller and gave full notice to the plaintiffs regarding its role. As alleged by the plaintiffs, there did not exist any material fact before the trial court to support their fourth count. Accordingly, the trial court properly granted summary judgment on that claim." Id., 187.
The facts of the present case bear remarkable resemblance to theSiudyla facts. First, the plaintiff was represented by counsel at the ACG sale, as stated in Carole Helms' affidavit. Second, the defendants explicitly stated in the sale agreement that they gave the plaintiff only limited warranties and that the plaintiff was to rely upon his own investigation of ACG. Finally, as in Siudyla, the Maloney affidavit admits that the plaintiff purchased ACG "as is." Accordingly, no genuine issue of material fact exists as to whether the defendants failed to disclose facts about ACG before the sale.
As for the alleged inducement of employees to leave ACG and the loss of ACG business to Wayfarer, these allegations do not violate CUTPA. These alleged actions are not connected to trade or commerce, under CUTPA, because Wayfarer is not alleged to have competed with the plaintiff. "The purpose of CUTPA is to protect consumers from unfair or deceptive business acts or practices, and competitors and other business people from unfair competition. . . . The focus of the statute is . . . not on unscrupulous behavior by businessmen in every aspect of their business lives, but on those specific types of unscrupulous behavior that takes place in, and adversely affect others who take part in, the particular trade or commerce in which the defendant is engaged." (Citations omitted; internal quotation marks omitted.) Cais v. Citizens Savings Bank of Connecticut,
Superior Court, judicial district of New London, Docket No. 556544 (September 17, 2001, Hurley, J.T.R.) As for the alleged failure to help ACG acquire new customers, the plaintiff bases this duty upon oral and CT Page 4557 written representations. The court has looked at the sale agreement and has found no such representation. As for an oral representation, the merger clause, quoted above, disproves that the parties had any oral agreement. Accordingly, the court finds that the defendants have demonstrated that no genuine issue of material fact exists.
For the reasons herein stated, the court grants the defendants' motion for summary judgment.
RUSH, J.